GREGORY M. SALVATO (SBN 126285)
Gsalvato@salvatoboufadel.com
MISTY PERRY ISAACSON (SBN 193204)
Misty@salvatoboufadel.com
JOSEPH BOUFADEL (SBN 267312)
Jboufadel@salvatoboufadel.com
**SALVATO BOUFADEL, LLP**
505 N. Tustin Avenue, Suite 282
Santa Ana, California 92705
Telephone: (213) 484-8400

Proposed General Counsel for
Debtor and Debtor-in-Possession
LORDON ENTERPRISES, INC.

IN THE UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LORDON ENTERPRISES, INC.,<br><br>    Debtor and<br>    Debtor-in-Possession. | Case No. 2:25-bk-19832-BR<br><br>Chapter 11<br><br>MOTION SEEKING DISALLOWANCE OF AMENDED CLAIM NO. 1 OF DOUGLAS KRUSHEN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MISTY PERRY ISAACSON AND DONALEA BAUER IN SUPPORT THEREOF; AND REQUEST FOR JUDICIAL NOTICE<br><br>Date: January 27, 2026<br>Time: 10:00 a.m.<br>Ctrm: 1668<br>Place: 255 E. Temple St.,<br>    Los Angeles, CA 90012 |

**TO THE CLAIMANT, DOUGLAS KRUSCHEN, AND HIS ATTORNEY OF RECORD, IF ANY:**

PLEASE TAKE NOTICE that LORDON ENTERPRISES, INC., Debtor and Debtor-in-Possession herein ("Debtor"), will and hereby does move the Court for entry of an order on his Objection to Claim No. 1 as amended ("Claim") filed by Douglas Kruschen ("Kruschen"). This Objection, pursuant to Local Bankruptcy Rules 3007-1 and 9013-1, is made on the grounds that Kruschen's Claim does not asset an existing liability, nor does it identify any factual or legal basis that would give rise to a right to payment under applicable law. Instead, Kruschen states only that he is engaged in litigation against a third party

who happens to be a client of the Debtor and that he might, at an unspecified future date, "anticipate filing additional civil actions" and "substitute a Doe defendant with Debtor." The Claim therefore rests entirely on speculation about hypothetical future events that may never occur. This Objection is based upon the within Motion, Memorandum of Points and Authorities, and the Declarations of Misty Perry Isaacson, and Donalea Bauer which is presented herewith.

Date: November 25, 2025                    SALVATO BOUFADEL, LLP

                              /s/ Misty Perry Isaacson
                    By: _____
                         Gregory M. Salvato
                         Misty Perry Isaacson
                         Joseph Boufadel
                         Proposed General Counsel for
                         Debtor and Debtor-in-Possession
                         LORDON ENTERPRISES, INC.

Salvato Boufadel, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**BACKGROUND FACTS**

**A.    The Debtor's History**

The Debtor is a property management company incorporated on or about March 6, 1974, and whose headquarters are based in Covina, California.  Debtor specializes in providing management and planning services to community associations, assisting in financial planning, governance support, and community development.  The Debtor was founded in 1966 by Don Melching, who drew upon his experience managing over 25,000 units, including motels, apartments, and homeowners associations.  From that experience, he recognized the need for a management firm that would approach each property with the same care and attention as its owners. At that time, the property management industry was in its early stages, and there was a growing demand for professional firms that could meet the distinct needs of association boards and their members.  The Debtor has maintained a longstanding reputation for ethical conduct and high-quality service, supported by a skilled and experienced management team dedicated to advancing the firm's tradition of excellence.

**B.    Debtor's Bankruptcy Filing**

On November 3, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. The Debtor remains in possession of its property and continues to operate as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

The instant chapter 11 filing is the result of the Debtor's alleged liability to Golf Projects Lindero ("GPL") and certain other creditors, the levy executed on the Debtor's deposit accounts held with Sunwest by GPL, and the resulting costs related to ongoing litigation and related appeals. The Debtor has filed this bankruptcy case to create breathing space from the litigation and to create a plan or repayment to its creditors, in lieu of liquidation.

In the evening of November 16, 2025, Krushen filed his proof of claim (claim number 1) in the amount of $0.00.  He thereafter filed an amendment to the Claim attaching additional "supporting" information for the Claim.  A true and correct copy of the Claim is attached hereto as Exhibit 1.  Later

that evening, Kruschen sent a four-page letter to Debtor's counsel demanding production of wide-ranging, proprietary, confidential, and commercially sensitive documents related to the Debtor's finances, business operations, and client relationships.  Krushen's demand included a threat that he would pursue a Rule 2004 examination if such information was not provided voluntarily.  A true and correct copy of Krushen's letter to Debtor's counsel is attached hereto as Exhibit 2.

## II.

## **LEGAL ARGUMENT**

### A.    **The Legal Standard Governing Claim Objections**

Section 502 of the Bankruptcy Code sets forth the general procedure for a debtor or a party-in-interest to object to a creditor's claim or interest. *See*, 11 U.S.C. § 502(a). Fed. R. Bankr. Proc. 3001 provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." See Fed. R. Bankr. P. 3001(f).  As such, failure of a debtor or party-in-interest to object would result in such proof of claim being deemed allowed. See 11 U.S.C. § 502(a); *Irvine-Pacific Commercial Ins. Brokers, Inc. v. Adams (In re Irvine-Pacific Commercial Ins. Brokers, Inc.)*, 228 B.R. 245, 246 (9th Cir. BAP 1998).

Basic claim objection procedure requires that an objection to claim be in writing and be filed with the Bankruptcy Court. *See*, Fed. R. Bankr. P. 3007.  When objecting to a claim, a party must present sufficient evidence and "show facts tending to defeat the claim by probative force equal to the allegations of the proofs of claim themselves." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991); *Abbate v. U.S. (In re Abbate),* 187 B.R. 9, 12 (D. Nev. 1995). The evidence must be such that "if believed would refute at least one of the allegations that is essential to the claim's legal sufficiency." *See*, *Lundell v. Anchor Constr. Specialist, Inc. (In re Lundell)*, 223 F.3d 1035, 1040 n.2 (9th Cir. 2000). However, if the Court finds that the objector has produced sufficient evidence to negate one or more of the sworn facts in claimant's claim, the burden reverts to the claimant to prove the validity of its claim by a preponderance of the evidence.  *Id.* at 1039, citing *In re Consol. Pioneer*, 178 B.R. 222, 226 (9th Cir. BAP 1995).  The ultimate burden of persuasion always remains with the claimant.  *Id. See*, *In re Holm 931 F.2d at 623.*

A "properly filed" proof of claim, as proscribed by the Judicial Conference in Official Form 10, consists of "(1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of

claim, (5) classification of claim, and (6) **supporting documents**." *In re Armstrong*, 320 B.R. 97, 104

(Bankr. N.D. Tex. 2005) (citations omitted) (emphasis added). The documentation required by Bankruptcy

Rule 3001 and Official Form 10 allows the debtor to have enough information to fully determine whether

or not a valid claim in the proper amount has been filed. *Id*. at 104-05. If the proof of claim lacks prima

facie validity, objections that raise a factual or legal ground should prevail absent an adequate response by

the claimant. See *Campbell v. Verizon Wireless S-CA (In re Campbell)*, 336 B.R. 430, 436 (9th Cir. B.A.P.

2005).

Upon an objection by a debtor or party-in-interest, however, the Court:

> after notice and a hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the petition, and shall
> allow such claim in such amount, except to the extent that –
>
> (1) such claim is unenforceable against the debtor and property of the
> debtor, under any agreement or applicable law for a reason other than because such
> claim is contingent or unmatured.

11 U.S.C. § 502(b)(1).

A "claimant must allege facts sufficient to support the claim. If the averments in his filed claim

meet this standard of sufficiency, it is 'prima facie' valid." *In re Consolidated Pioneer Mortg. Entities*,

178 B.R. 222, 226 (9th Cir. BAP 1995) citing, *In re Allegheny International, Inc*. 954 F.2d 167, 173-174.

Accordingly, if a claim lacks factual support, the burden of persuasion remains on the claimant to

demonstrate by a preponderance of the evidence that the claim deserves to share in the distribution of the

debtor's assets. *Id*. at 174.

**B.    The Claim Asserts No Enforceable Obligation and Must be Disallowed under § 502(b)(1)**

"Debt" is liability on a "claim." 11 U.S.C. 101(12). "Claim" is defined as a "right to payment,

whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured or unsecured. 11 U.S.C. § 101(5). A "creditor"

is defined to include an "entity that has a claim against the debtor that arose at the time of or before the

order for relief concerning the debtor." 11 U.S.C. § 101(10). In determining whether a creditor's claim

arose prepetition, the Ninth Circuit has implemented the "fair contemplation" test. *Picerne Constr. Corp.

v. Castellino Villas, A.K.F. LLC (In re Villas)*, 836, F.3d 1028 (9th Cir. 2016). Under this test, "a claim

arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *In re SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009).

Even though § 101(5) defines "claim" very broadly, the court in *Jensen*, 995 F.2d 925 (9th Cir. 1993) recognized that there is a boundary. Just because something *might* happen post-petition doesn't mean there was a pre-petition "claim" for bankruptcy-discharge purposes unless it's more than purely speculative. In *Jensen*, the Ninth Circuit held that the California Regional Water Quality Control Board had a pre-petition claim because, before the Debtor's bankruptcy filing, the contamination existed, it had inspected the site, and potential liability could be fairly and reasonably contemplated even though (1) the cleanup order had not yet been issued, and (2) the cause of action had not accrued under nonbankruptcy law. The Ninth Circuit's reasoning in *Jensen* is consistent with the policy goal of giving the debtor a "fresh start" while ensuring that obligations that were reasonably foreseeable (even if not yet liquidated) are dealt with in the bankruptcy.

Unlike *Jenson*, in the within matter, Kruschen's Claim is legally deficient because it alleges no existing liability, no contract, no tort, no transaction, no injury, and no factual circumstances giving rise to a prepetition right to payment. Kruschen's assertion that he may, at some point in the future, consider amending a lawsuit in which the Debtor is not a party is not an enforceable right to payment under bankruptcy or non-bankruptcy law and does not fit within the "fair contemplation test." Additionally, a contingent claim is only allowable if the underlying legal obligation existed prepetition, even if damages were not fixed. Here, nothing exists.

## C.    The Debtor has Rebutted Any Presumption of Validity

Even if the Claim were entitled to prima facie validity, which it is not, the Debtor has rebutted any presumption by demonstrating that the Claim includes no factual allegations supporting liability. Once rebutted, the Claimant must prove the existence of a claim by a preponderance of the evidence. *Lundell*, 223 F.3d at 1039. Kruschen cannot meet this burden because he has no evidence of any relationship with the Debtor, no legal duty owed by the Debtor, and no damages attributable to the Debtor.

## D.    The Circumstances Surrounding the Claim Indicate an Improper Purpose

While Kruschen has not admitted any improper purpose, the circumstances surrounding the filing of his claim strongly indicate that he may be attempting to use the bankruptcy claims process to obtain

Salvato Boufadel, LLP

information not otherwise available to him.  Shortly after filing his Claim, Kruschen sent Debtor's counsel a letter demanding extensive proprietary documents and confidential business records threatening a Rule 2004 examination unless such information was produced voluntarily.  *See*, Exhibit 2.  None of the requested information relates to an asserted right to payment or any cause of action described in the Claim.  The timing and content of these demands strongly suggest an improper motive and reinforce that the Claim lacks legitimacy.  Specifically, in light of the fact that Kruschen holds himself out as an HOA Internal Dispute Resolution ("IDR") advocate collaborating with HOA Directors and Community Association Managers to "improve processes, policies, and procedures, ensuring homeowner rights are upheld" as noted on his website https://www.hoadvocate.com/about-us/.  True and correct screenshots of his website are attached hereto as Exhibit 4.

Additionally, after the Petition Date, the Debtor's representatives became aware of multiple online postings by the Krushen in HOA related discussion forums, including Nextdoor, a private neighborhood-based platform. *See*, declaration of Donalea Bauer ("Bauer Decl.") ¶ 4; Ex. 5.  In these posts, Krushen made false or misleading statements about the Debtor's operations, including claims that the Debtor was mishandling HOA matters and engaging in improper business practices. (Bauer Decl. ¶ 6.)

Kruschen also appeared in a newspaper article distributed throughout Ventura County and surrounding communities, inaccurately stating that the Debtor had been "losing contracts left and right." (Bauer Decl. ¶ 5; Ex. 3.) These statements were untrue, lacked factual support, and were designed to cause reputational harm.  Significantly, Kruschen used these online forums not merely to criticize the Debtor, but to position himself as someone experienced in HOA disputes and capable of assisting or guiding homeowners in taking legal action against their HOAs or management, encouraging individuals to contact him privately. (Decl. ¶ 7.) This demonstrates that his conduct is commercial and competitive in nature, not that of a creditor seeking to recover a debt.

Viewed together, the postings, public statements, and solicitations create a clear pattern: Kruschen is attempting to insert himself into the Debtor's client relationships, influence HOA members, and acquire inside information regarding the Debtor's clients and business operations.

Bankruptcy courts have authority under § 105(a) to prevent misuse of the claims process and to deny access to discovery mechanisms used for competitive or improper purposes.  Courts regularly deny attempts to use Rule 2004 as a fishing expedition or a means to gain a competitive advantage.  The timing and nature of Kruschen's demands underscores the lack of a legitimate creditor relationship and further support disallowance of the Claim.

**III.**

**<u>CONCLUSION</u>**

A proof of claim must assert a legitimate right to payment. Here, Kruschen's conduct, including his public statements, solicitations, and attempts to insert himself into HOA disputes involving the Debtor, demonstrates that he is not a creditor but is instead using the bankruptcy claims process as a mechanism to obtain confidential client and HOA information for his own purposes.

Kruschen's public campaign of misinformation designed to damage the Debtor's business reputation and solicit HOA members into potential disputes demonstrates his true motives in filing the Claim.  Because Kruschen has no valid claim against the Debtor, and because the filing was made for an improper purpose of obtaining confidential information and disrupting the Debtor's client relationships, the Court should sustain the objection, disallow the claim in its entirety, and grant any further relief the Court deems appropriate.

Date:  November 25, 2025                              SALVATO BOUFADEL, LLP

                                                                    /s/ Misty Perry Isaacson
                                                     By: _____
                                                            Gregory M. Salvato
                                                            Misty Perry Isaacson
                                                            Joseph Boufadel
                                                            Proposed General Counsel for
                                                            Debtor and Debtor-in-Possession
                                                            LORDON ENTERPRISES, INC.

Salvato Boufadel, LLP

## DECLARATION OF DONALEA BAUER

I, Donalea Bauer declare:

1.      I am the Vice President of Operations of the Debtor.  I have personal knowledge of the facts stated in this declaration and, if called as a witness could and would testify competently thereto.

2.      In the ordinary course of performing my duties, I monitor communications, inquiries and publicly available commentary relevant to the Debtor's business and its client relationships, including homeowner association ("HOA") forums where homeowners frequently discuss management issues, complaints, and vender interactions.

3.      On his website, Kruschen holds himself out to be a non-lawyer who assists homeowners with advocacy and representation.  True and correct screenshots of Kruschen's website are attached hereto as Exhibit 3.

4.      After the Petition Date, and continuing periodically thereafter, I became aware of several online comments made by Kruschen in various HOA related discussion forums.  These forums include Nextdoor, which is a private social media network that connects neighbors within their local communities, allowing them to communicate and share information.  True and correct screenshots that I took of Kruschen's statements on Nextdoor are attached hereto as Exhibit 5.

5.      In these postings Krushen made statements regarding the Debtor and its operations that were false or misleading.  Among other things, he implied or asserted that the Debtor was mishandling certain HOA related matters, failing to comply with legal obligations, or engaging in improper business practices.  These allegations were untrue, and I am not aware of any factual basis supporting them. The nature of the postings along with their timing and content, raised concerns for me that Kruschen may be attempting to influence or solicit HOA members by spreading inaccurate information about the Debtor in public forums.

6.      In several of these postings, Kruschen represented himself as someone knowledgeable about HOA disputes or litigation and suggested that he could "assist" or "guide homeowners or HOA members who might with to bring claims or legal actions against their HOA or its management.  In some instances, he encouraged forum participants to contact him privately.

Salvato Boufadel, LLP

7.      He was also quoted in the Acorn, a print and online newspaper covering Camarillo, Calabasas, Agoura Hills, Oak Park, Newbury Park, Thousand Oaks, Westlake Village, Moorpark and Simi Valley.  In the article, he falsely claims that the Debtor has been "losing contracts left and right." A true and correct copy of the online article is attached hereto as Exhibit 3.

8.      Based on my knowledge of our operations and client relationships, the statements made by Kruschen in his Claim appear to be speculative, unfounded, and inconsistent with the actual performance of the Debtor.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on November 24, 2025, at Covina, California.

Donalea Bauer

Salvato Boufadel, LLP

### <u>DECLARATION OF MISTY PERRY ISAACSON</u>

I, Misty Perry Isaacson declare:

1.      I am proposed general counsel for the Debtor in this chapter 11 case and have personal knowledge of the matters set forth herein.

2.      Shortly after Kruschen filed the Claim that is the subject of the Debtor's Motion, I received a letter from him demanding that the Debtor produce extensive categories of documents, including proprietary, confidential, and commercially sensitive information relating to the Debtor's finances, business operations, and client relationships.  The letter also threatened that he would seek a Rule 2004 examination unless such information was voluntarily provided.  A true and correct copy of that letter, as I received in the ordinary course of my representation is attached as Exhibit 2 hereto.

3.      The timing of the demand letter, the sweeping nature of the information requested, and the content of Kruschen's public comments caused me to become concerned that the proof of claim was filed not to assert a legitimate prepetition right to payment, but to provide a pretext for seeking access to the Debtor's confidential information.

4.      The Claim as filed contains no factual basis connecting the Debtor to any alleged liability, and Kruschen has provided no evidence of an actual claim.

5.      Kruschen holds himself out as an HOA Internal Dispute Resolution ("IDR") advocate collaborating with HOA Directors and Community Association Managers to "improve processes, policies, and procedures, ensuring homeowner rights are upheld" as noted on his website https://www.hoadvocate.com/about-us/.  True and correct screenshots of his website that I downloaded are attached hereto as Exhibit 4.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 25th day of November 2025, at Santa Ana, California.

/s/ Misty Perry Isaacson

_____
Misty Perry Isaacson

Salvato Boufadel, LLP

Case 2:25-bk-19832-BFR   Claim 20   Filed 11/25/25   Desc Main Document

**Fill in this information to identify the case:**

Debtor 1  Lordon Enterprises, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **25–19832**

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

11/16/2025

**Kathleen J. Campbell, Clerk**

Official Form 410
## Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Kruschen, Douglas

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Kruschen, Douglas

Name

P.O. Box 465
MSC: F5D9T3B7X4K
Agoura Hills, CA 91376, CA 91376–0000

Contact phone _____639.478.0382_____

Contact email _____

Uniform claim identifier (if you use one):
_9 5 2 9 3 9 9 3 5_

Where should payments to the creditor be sent? (if different)

James Perero, Esq.

Name

MWGJ&F
39 N. California Street

Ventura, CA 93001–0000

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) ___1___   Filed on __11/16/2025__
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:      9935 |
| **7. How much is the claim?** | $ 0.00      **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>See attached Statement of Basis for Claim. |
| **9. Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>    **Nature of property:**<br>    ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>    ☐ Motor vehicle<br>    ☐ Other. Describe:<br><br>    **Basis for perfection:**<br><br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:**   $<br>    **Amount of the claim that is secured:**   $<br>    **Amount of the claim that is unsecured:**   $    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition:**   $<br><br>    **Annual Interest Rate** (when case was filed)    %<br><br>    ☐ Fixed<br>    ☐ Variable |
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ |
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: |

Official Form 410        Proof of Claim        page 2

     EXHIBIT 1

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
| | | ☐ Yes. *Check all that apply:* | | Amount entitled to priority |

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑  I am the creditor.

☐  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/16/2025

MM / DD / YYYY

/s/  Douglas Kruschen

Signature

Print the name of the person who is completing and signing this claim:

Name                Douglas Kruschen

First name    Middle name    Last name

Title                Creditor

Company

Address

Identify the corporate servicer as the company if the authorized agent is a servicer

P.O. Box 465 – MSC: F5D9T3B7X4K

Number   Street

Agoura Hills, CA 91376–0000

City   State   ZIP Code

Contact phone    639.478.0382          Email

*Attachment to Proof of Claim (Official Form 410)*

**Statement of Basis for Claim**

Claimant is the plaintiff in the following actions:

- Los Angeles Superior Court case no. 24STLC07774,
- Los Angeles Superior Court case no. 25STLC01381,
- Los Angeles Superior Court case no. 23VECP00088, and
- United States District Court for the Central District of California, Western Division, case no. 2:25-CV-02883-FLA.

These matters seek damages for conduct occurring prior to the bankruptcy petition date.

Claimant also anticipates filing additional civil actions in the Los Angeles Superior Court.

In the Superior Court actions, claimant may substitute a Doe defendant with Debtor pursuant to California procedural law, as Debtor may be legally responsible for the injuries alleged. In the federal action, Debtor is likewise implicated as a potentially liable party under the operative allegations. Any additional anticipated Superior Court actions would assert related liability theories.

No judgment has been entered, and no court has determined liability or fixed the amount of damages. The claim is therefore contingent, unliquidated, and disputed.

This proof of claim is submitted to preserve claimant's rights in the bankruptcy estate. It does not waive any right to seek relief from the automatic stay to pursue amendment, substitution of parties, or further proceedings in the pending or anticipated actions.

EXHIBIT 1

November 16, 2025

Misty A. Perry Isaacson
MPI Law, P.C.
505 N. Tustin Ave., Suite 282
Santa Ana, CA 92705
*(Via Email: misty@salvatoboufadel.com)*

      Re:    In re Lordon Enterprises, Inc. dba Lordon Management Co.
               United States Bankruptcy Court, Central District of California
               Case No. 2:25-BK-19832-BR

Counsel:

I am a creditor of Lordon Enterprises, Inc. dba Lordon Management Co. (the "Debtor") as a plaintiff in litigation, and anticipated litigation, involving the Debtor and its related parties. I write to demand production of specific documents that bear directly on the Debtor's financial condition, the accuracy of its filings, and its handling of client association funds.

I intend to appear at the upcoming section 341 meeting of creditors and to examine Donald Melching under oath. This letter is an effort to secure voluntary cooperation in advance. If the Debtor refuses to cooperate, I will proceed with a formal motion under Federal Rule of Bankruptcy Procedure 2004 and will separately request that the United States Trustee and the chapter 11 trustee take appropriate action to compel production.

Please treat this as a formal written request for the following documents and information.

1. Executory Contracts with Client Associations

     1.1 All current executory contracts between the Debtor and any homeowners association, condominium association, or similar common interest community client, including but not limited to management agreements, amendments, addenda, renewals, and any related side letters.

     1.2 All executory contracts with such associations that were terminated, non renewed, or otherwise concluded within the past eighteen months, including termination notices, non renewal notices, and any correspondence stating the reason for termination.

2. Client Association Lists and Relationship Dates

              EXHIBIT 2

2.1 A list identifying all current client associations, including for each:

- The full legal name of the association
- The date the relationship began
- The effective date of the current contract
- The date the current contract is scheduled to terminate or renew

2.2 A list identifying all client associations whose relationships with the Debtor ended within the past eighteen months, including:

- The full legal name of each association
- The date the relationship began
- The date the relationship ended
- The stated reason for termination, if any

## 3. Bank Accounts Used for Client Funds

3.1 A complete list of all bank accounts that hold or have held client association funds and that the Debtor has access to or control over, including any general operating accounts that are or were used to receive, hold, or disburse association assessments or other client monies.

For each such account, provide:

- Financial institution
- Account title
- Whether the account is titled in the name of the association, the Debtor, or any variation
- The general purpose of the account

3.2 Bank statements for all accounts described in section 3.1 for at least the twenty four months preceding the petition date and all months postpetition through the most recent available statement.

3.3 Any internal policies, written procedures, or manuals that describe how association funds are to be handled, deposited, transferred, or disbursed, including any statements regarding commingling, use of general operating accounts for client funds, or internal controls.

## 4. Sunwest Bank Overdraft and Related Internal Records

4.1 All account statements, internal emails, memoranda, and reports concerning the Sunwest Bank overdraft or any related dispute, including any analysis or investigation performed by or for the Debtor.

EXHIBIT 2

*Misty A. Perry Isaacson*
*Page 3 of 4*

4.2 All correspondence between the Debtor and Sunwest Bank concerning the overdraft, any alleged shortfall, repayment demands, or settlement discussions.

## 5. Dexwell Inc. and Accounting System Integrity

5.1 All contracts and statements of work with Dexwell Inc. relating to accounting, assessment processing, association financial records, or management systems.

5.2 All internal and external communications concerning any system failures, outages, data loss, reconciliation issues, or functional limitations involving software or services provided by Dexwell Inc.

5.3 Any reports, audits, or internal reviews conducted to evaluate whether Dexwell related issues affected the accuracy of association accountings or client funds.

## 6. Payroll, Personnel, and Employment Dispute Records

6.1 Payroll records, personnel records, and any written complaints, grievances, or demand letters involving the following individuals:

- Alison Arnold
- Madison Bauer
- Karissa Hardy
- Michelle Soto
- Alex Troncoso

6.2 Any separation agreements, settlement agreements, or releases involving any of the above individuals, whether executed or proposed, and any related correspondence concerning wage claims, unpaid compensation, or employment disputes.

You may redact sensitive medical or personal identifying information, provided the substance of the dispute, dates, and amounts are not obscured.

## 7. Public Statements and Communications Regarding the Bankruptcy Filing

7.1 Copies of any public statements, social media posts, email blasts, website postings, or client communications in which the Debtor, its officers, or employees, including Donalea Bauer, discussed:

- The reasons for the chapter 11 filing

EXHIBIT 2

- The intended effect of the filing on existing litigation
- Any description of the filing as a procedural step to pause or manage litigation

7.2 Internal communications, including emails and memoranda, reflecting the Debtor's internal discussion and approval of such public statements.

7.3 All communications, whether written, emailed, electronic, or otherwise transmitted, sent by the Debtor or any employee or representative of the Debtor to any client association, board member, homeowner, or management-contact relating to, referring to, or announcing the Chapter 11 filing. This request includes drafts, internal approval requests, prepared talking points, and any instructions provided to staff regarding what they were permitted or directed to tell clients about the bankruptcy.

8. Form of Production and Deadline

Please produce the requested documents electronically in PDF or other reasonably accessible format via optical media or USB data drive.

Absent agreement to a reasonable written schedule, I expect full production of the requested materials within seven days of the date of this letter.

If the Debtor refuses to produce these documents, delays without justification, or provides incomplete production, I will file a motion under Rule 2004 seeking an order for examination and production, and I will separately request that the United States Trustee and the chapter 11 trustee require compliance and investigate any apparent deficiencies in the Debtor's disclosures and controls.

Nothing in this letter waives any rights, claims, or remedies I hold in this bankruptcy case or in any related litigation. All such rights are expressly reserved.

Please confirm in writing whether and when you will comply with this request.

Sincerely,

Douglas Kruschen
Creditor
P.O. Box 465
MSC: F5D9T3B7X4K
Agoura Hills, CA 91376
(818) 927-1040



# Key HOA management company files for Chapter 11 bankruptcy

Lordon lists almost $15 million in debts

*November 21, 2025*

By John Loesing
newstip@theacorn.com



A key player representing local homeowners associations has filed for Chapter 11 bankruptcy protection, throwing a cloud of uncertainty over HOA interests in the region and further complicating the role fiduciaries play in the management of grouped residential properties.

Lordon Management, a Southern California-based family-owned company that represents, among others, the Lake Lindero, Annandale and Liberty Canyon neighborhoods of Agoura Hills as part of its 200-member California HOA portfolio, filed for bankruptcy Nov. 3 in the Central District of California. It lists between 50 and 99 creditors to whom it owes nearly $15 million in judgments, wages, products and services.

The company, which has offices in Covina, Camarillo and Tustin, lists assets between $500,000 and $1 million. The business could not be reached for comment. Lordon was also the property manager for the Agoura Hills Morrison Ranch HOA until a breakup between the two a few years ago.

EXHIBIT 3

The biggest hit against Lordon came this year when it lost a $14.1-million judgment to Golf Projects Lindero, a property manager with whom the Lake Lindero HOA board had previously cut ties following a dispute over management services. In 2017, GPL sued the Lake Lindero HOA for wrongful termination of contract, and filed subsequent litigation against Lordon for further damages.

Lordon, according to GPL court filings, continued to wrongfully act as the operator for an HOA that a judge had already blamed for malfeasance on a number of fronts, including breach of contract and hacking into GPL's private email account.

The Agoura Hills-based GPL won sanctions in both cases. It received a $15.6-million judgment against Lake Lindero in 2024 and a $14.1-million ruling against Lordon earlier this year.

During its six-year dispute with GPL, the HOA "had lost its way" and "failed to do the right thing" in service to its residents, Judge Shirley Watkins had said in court statements leading up to the Lake Lindero judgment.

GPL said in a statement following last year's court victory: "Neither the association nor the board ever demonstrated a desire to amicably or reasonably resolve this dispute. . . . The association's past actions have had, and will continue to have, many detrimental impacts on people's lives."

Stymied in its efforts to collect on the two large judgments, GPL tried recently to get its hands on $540,000 in a Lordon bank account, but learned that the longtime property manager had filed for bankruptcy and that the money wasn't available.

While Lordon, like most property managers, was indemnified by the HOA its serves, the company's Chapter 11 filing still lists a $14-million debt to GPL that ultimately must be answered for.

The Lake Lindero homeowners board has been criticized by some members for not working harder to achieve a settlement in the years-long court case scarred by mounting legal fees.

In an increasingly soft housing market, home sellers in the 459-home community located on the Agoura Hills-Westlake Village border face an additional challenge of having to disclose to potential buyers the litigation in which their HOA has long been embroiled. The homeowners association continues to appeal the large penalty against it.

As for Lordon, their bankruptcy filing did not sit well with Douglas Kruschen, a licensed community association manager (LCAM) from Agoura Hills who voluntarily advises and helps residents navigate the treacherous waters of HOA membership.

EXHIBIT 3

"The writing's been on the wall for this kind of thing for a while because they've been losing contracts left and right," Kruschen said. "If you're doing so bad that you can't even pay your employees, I mean, there's a huge problem there."

The Lordon bankruptcy filing lists more than $24,000 in wages still owed to company employees.

Unlike Lake Lindero, led by a group of board volunteers who sometimes are not fully schooled in the complexities of contract law, and whose ill-timed decision to terminate a manager's agreement led to costly consequences, Lordon's downfall represents a betrayal of 60 years of experience in property management.

The company was founded in 1966 by businessman Donald Melching, the current CEO who's now in his 90s. It remained a family-run business and was by and large considered to be an industry success story until its final chapter was written two weeks ago, Chapter 11.

Kruschen issued an additional warning: "If a fiduciary can't manage their own finances, how can they be expected to manage the finances of their HOA clients?"

The California Association of Homeowners Associations estimates more than 50,000 HOAs serve common area interests in the state, a number comprising approximately 14 million people and 4.6 million homes. About three-fourths of the HOA's are professionally managed by companies such as Lordon.

EXHIBIT 3

# Related Stories by The Acorn

Go To The News Section







## School teacher dismissed for Charlie Kirk comments returns to the classroom

A Las Virgenes Unified School teacher who was placed on leave for posting comments about the Sept. 10 Charlie Kirk...

## Drenched by record November rain

## Negligence alleged in boy's death

The family of the 8-year-old boy killed by a falling oak branch at King Gillette Ranch in Calabasas last summer...

Load More

EXHIBIT 3



(https://www.hoadvocate.com/)

HOME (HTTPS://WWW.HOADVOCATE.COM/)

ABOUT US (HTTPS://WWW.HOADVOCATE.COM/ABOUT-US/)

SERVICES (HTTPS://WWW.HOADVOCATE.COM/SERVICES/)

WHAT'S THE DAVIS-STIRLING ACT? (HTTPS://WWW.HOADVOCATE.COM/WHATS-THE-DAVIS-STIRLING-ACT/)

CONTACT US (HTTPS://WWW.HOADVOCATE.COM/CONTACT-US/)

SAMPLE FORMS (HTTPS://WWW.HOADVOCATE.COM/SAMPLE-FORMS/)

SUCCESS STORIES (HTTPS://WWW.HOADVOCATE.COM/SUCCESSES/)

## ABOUT US

# NON-LAWYER IDR ADVOCACY. SIMPLIFIED.

---

# DOUGLAS KRUSCHEN
## CO-FOUNDER / ADVOCATE

EXHIBIT 4



Douglas brings deep expertise from the technology sector, where he built a successful IT consulting business serving property management firms and attorneys both locally and nationwide. He has hands-on experience with key industry platforms, including TOPS [ONE] (Enumerate), Yardi, Control, AppFolio, and TownSq, among others, and has a strong grasp of the operational realities within the HOA industry.

In 2016, Douglas began consulting with Laura Sherwood and the Sacramento-based team at The HOA Warriors. So when the opportunity to acquire its assets presented itself in 2021, he jumped at the chance to carry their mission forward.

Drawing on his paralegal background and state licensure as a Community Association Manager, Douglas has represented clients in non-attorney roles across a range of venues, including workers' compensation, CalEDD, CalCRD (formerly DFEH), and HOA IDR hearings. His advocacy extends beyond conflict resolution—he collaborates directly with HOA Directors and Community Association Managers to improve processes, policies, and procedures, ensuring homeowner rights are upheld while balancing the complex responsibilities of boards and management.

As an experienced HOA member and Director himself, Douglas has successfully navigated litigation, securing multiple judgments in his favor that reflect his integrity and strict adherence to federal, state, and local laws.

As Laura used to say, "When life gives you lemons, make limoncello." Douglas couldn't agree more.

EXHIBIT 4



"you guys give up, or are you thirsty for more?"

Built with BoldGrid (http://boldgrid.com/)   |

Powered By DreamHost (https://www.dreamhost.com/)   |

Special Thanks (https://www.hoadvocate.com/attribution/)



(https://www.hoadvocate.com/)

HOME (HTTPS://WWW.HOADVOCATE.COM/)

ABOUT US (HTTPS://WWW.HOADVOCATE.COM/ABOUT-US/)

SERVICES (HTTPS://WWW.HOADVOCATE.COM/SERVICES/)

WHAT'S THE DAVIS-STIRLING ACT? (HTTPS://WWW.HOADVOCATE.COM/WHATS-THE-DAVIS-STIRLING-ACT/)

CONTACT US (HTTPS://WWW.HOADVOCATE.COM/CONTACT-US/)

SAMPLE FORMS (HTTPS://WWW.HOADVOCATE.COM/SAMPLE-FORMS/)

SUCCESS STORIES (HTTPS://WWW.HOADVOCATE.COM/SUCCESSES/)

# NON–LAWYER IDR ADVOCACY AND REPRESENTATION

---

## WHY ENGAGE AN ADVOCATE?

If you're a homeowner, by the time you're ready to call for an IDR (https://www.hoadvocate.com/whats-idr/), expecting your HOA to "do the right thing" was only a fleeting dream, and hiring an attorney is an expensive and

aggressive move. A non-lawyer advocate with experience can work to cut through the red tape where you and even an experienced attorney cannot. Your HOA's Bylaws, CC&Rs, and Rules and Regulations protect and guide you and your HOA.

The truth is, HOAs are required by law to participate in good faith and the IDR is the "procedure they don't want you to know about!"

California's Davis–Stirling Act (https://www.hoadvocate.com/whats-the-davis-stirling-act/) gives power to both homeowners and HOAs. An experienced and educated advocate helps you use it to your advantage.

Sometimes a gentle push beats a bulldozer.

Contact us (https://www.hoadvocate.com/contact-us/) today for a no-cost, no-obligation, consultation.



EXHIBIT 4

▼

**Download a FREE 2022 Condo & Townhouse Owner's Cheatsheet.**



(https://www.hoadvocate.com/wp-

content/uploads/2022/11/2022-HOA-Warriors-Cheatsheet.pdf)

▼

Built with BoldGrid (http://boldgrid.com/)    |

Powered By DreamHost (https://www.dreamhost.com/)    |

Special Thanks (https://www.hoadvocate.com/attribution/)



**Maria Lapinid**  2d · Simi Valley, CA                                      ···

This makes me sad, Danielle. I feel that our HOA representative is responsive to issues in our Park Lane community. Worried what this news means for us?

♡ Like        ○ Reply        ⌁ Share

---

**D**   **Douglas K.**  2d · Agoura Hills, CA                                ···

**Maria** if you're in a Lordon community do you want your HOA continuing to do business with a management company that can't manage its own business?

♡ 4        ○ Reply        ⌁ Share                              🌙👍 4

↳ **See 2 more replies**

---

**M**   **Mike Wahl**  2d · Edited · Agoura Hills, CA                        ···

The old Lake Lindero HOA board that was around when corrupt GPL was the management company were sheisters !!!!.

♡ Like        ○ Reply        ⌁ Share

---

**Nancy Feigelson**  2d · Westlake Village, CA                              ···

They're horrible! Chapter 11 is for restructuring. They need a lot of help.

♡ 2        ○ Reply        ⌁ Share                              🌙👍 2

---

**Mary Troness**  2d · Thousand Oaks, CA                                    ···

I'm sorry to hear that, I know the Fire Insurance is a Big Issue for our HOA here in Wildwood, who is your Property Management Company?

♡ Like        ○ Reply        ⌁ Share

---

**N**   **Nora H.**  1d · Thousand Oaks, CA                                 ···

**Mary** , it's Lordon.  They filed for bankruptcy!

♡ Like        ○ Reply        ⌁ Share

♡ Like   ○ Reply   ⇗ Share

---

**D**  **Douglas K.** 1d · Agoura Hills, CA                                    ⋯

**Rossi** encourage your Board to choose a manager that can at
least manage their own business.

♡ 1   ○ Reply   ⇗ Share                                                      ❤ 1

↪ See 4 more replies

---

**B**  **Bob Bermant** 1d · Thousand Oaks, CA                                ⋯

I agree with Douglas.  We don't need any problems.

♡ Like   ○ Reply   ⇗ Share

---

**Chris Coleman** 1d · Moorpark, CA                                          ⋯

Chapter 11 is a court supervised reorganization.  It's not unusual for
corporations to go through this when they have financial difficulties.
I'm not making excuses for Lordon or apologizing for them, but just
acknowledging the reality of the business situation.

We currently have Lordon as a management company for our HOA,
and their service has been completely acceptable and affordable.  Our
previous one was pretty bad BTW...

Despite their reorganization, as long as their fees and service aren't
negatively impacted, we will likely retain their services.  It requires
some investment to change companies and nothing they've
personally done in our HOA warrants their dismissal.

Just stating the facts on the ground...

♡ Like   ○ Reply   ⇗ Share

The Management Trust
100 Thousand Oaks Blvd Ste 235, Thousand Oaks, CA

♡ Like      ◯ Reply      ⤳ Share

**Rick O'Mara** 1d · Edited · Westlake Village, CA                    ···

Time to dump Lordon if you have them as your property management company. This bankruptcy will legally release you from your contract with Lordon.

♡ 3      ◯ Reply      ⤳ Share                          ◖◖◉ 3

**Paul Biere** 19h · Thousand Oaks, CA                    ···

Rick I agree, the bankruptcy isn't the issue with me, its their lack of response to homeowners, their changing managers without letting the homeowners know, not doing their monthly walk throughs, the list goes on and on

♡ Like      ◯ Reply      ⤳ Share

**Shelly Storey** 1d · Edited · Agoura Hills, CA                    ···

this is so disgusting.  Always the mismanagement at the top but they never suffer the consequences.  ESPECIALLY Annandale -

♡ Like      ◯ Reply      ⤳ Share

**Douglas K.** 1d · Agoura Hills, CA                    ···

Shelly when owners get tired an join in litigation things can change.

♡ 1      ◯ Reply      ⤳ Share                          ♥ 1

↳ See 1 more reply

**Rossi Franco** 1d · Simi Valley, CA                    ···

Danielle, thank you for sharing. So, how we need to proceed?

♡ Like      ◯ Reply      ⤳ Share

See previous comments

**R**    **Ryan E.** 1w · Malibu, CA                                              ···

Management isn't a fiduciary in legal sense.  It is an agent of the HOA
and can get the HOA into legal trouble by ignoring owners' individual
property rights.  I have had horrible experience with many large
management companies that think they're so big that they won't be
held accountable for gross mismanagement or willful misconduct.
One Malibu management company was raided for stealing funds on
the 31-st day of the month and only running 1-30 financial print-outs
for Treasurers' review, then giving excuses that payments were for
routine labor work like janitors and guards but checks were washed for
the thefts.  Don't believe the trick that there are 52 weeks a year and
not 48, so the numbers won't ever match up, etc.  INSIST on choosing
your own auditor who reports directly to the Board -- not anyone
selected or referred by Management.

♡ Like      ◯ Reply      ⬈ Share

**D**    **Douglas K.**  Author  1w · Agoura Hills, CA                             ···

Ryan, management companies have a fiduciary duty to each of
their client HOAs, that in turn are fiduciaries for each of their
member owners. As far as property owners are concerned, the
buck stops with the HOA.

A bankrupt management company puts client HOAs into a
terrible position. Knowingly entrusting a bankrupt manager with
homeowner funds seems like negligence to me!

There's no FINRA, SEC, or FDIC involved with oversight of
management companies. Way too risky as far as I am concerned.

♡ 1      ◯ Reply      ⬈ Share                                                    ♥ 1

# **REQUEST FOR JUDICIAL NOTICE**

Lordon Enterprises, Inc., Debtor and Debtor-in-Possession ("Debtor") hereby requests, pursuant to Federal Rule of Evidence, that this Court take judicial notice of the following publicly available record:

| No. | Judicially Noticed Document |
|-----|-----------------------------|
| 1 | Amended Proof of Claim No. 1 filed by Douglas Kruschen on November 16, 2025 |

Date:  November 25, 2025

SALVATO BOUFADEL, LLP

/s/ Misty Perry Isaacson

By: _____
Gregory M. Salvato
Misty Perry Isaacson
Joseph Boufadel
Proposed General Counsel for
Debtor and Debtor-in-Possession
LORDON ENTERPRISES, INC.

Salvato Boufadel, LLP

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**505 N. Tustin Ave., Suite 282, Santa Ana, CA 92705**

A true and correct copy of the foregoing document entitled (*specify*): **MOTION SEEKING DISALLOWANCE OF AMENDED CLAIM NO. 1 OF DOUGLAS KRUSHEN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MISTY PERRY ISAACSON AND DONALEA BAUER IN SUPPORT THEREOF; AND REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **11/25/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Robert S McWhorter**    rmcwhorter@buchalter.com, asmith@buchalter.com;dpowers@buchalter.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **11/25/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Douglas Kruschen<br>PO Box 465<br>MSC: F5D9T3B7X4K<br>Agoura Hills, CA 91376, CA 91376−0000 | Hon. Barry Russell<br>255 E. Temple Street, Suite 1660<br>Los Angeles, CA 90012<br>(Judge's Copy) |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/25/2025 | Misty Perry Isaacson | **/s/ Misty Perry Isaacson** |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**